IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | Crim. No. MJM-23-445 |
| v. | * | |
| | * | |
| ANTON JENIFER, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM ORDER**

The pending Indictment charges defendants Anton Jenifer and Mark Turner with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. ECF 1 (Indictment, Count One). Jenifer is also charged with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841. *Id.* (Count Two). This matter is scheduled for an eight-day jury trial to start on January 5, 2026.

This matter is before the Court on motions in limine filed by Jenifer and Turner seeking exclusion of certain trial exhibits designated by the Government. For reasons explained herein, Jenifer's first motion in limine (ECF 110) is denied in part, his second motion in limine (ECF 117) is granted, and Turner's motion in limine (ECF 116) is denied.

**I.      Hearsay Objections to Recorded Phone Calls**

Jenifer's first and second motions in limine each raise hearsay objections to certain recorded phone calls designated by the Government as trial exhibits. ECF 110 & 117. The Government argues that the phone calls are non-hearsay under Rule 801(d)(2)(E) of the Federal Rules of Evidence and otherwise excepted from the rule against hearsay under Rule 804(b)(3). Upon review of the challenged exhibits, the Court grants exclusion of all but one of the phone calls

1

as hearsay. Jenifer's first motion in limine (ECF 110) is denied as to recorded phone call session no. 199 (Government Exhibit 4.21), and his second motion in limine (ECF 117) is granted as to the remaining challenged phone calls.

Hearsay, defined as an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement[,]" Fed. R. Evid. 801(c), is generally inadmissible, Fed. R. Evid. 802. Rule 801(d) provides that a statement is not hearsay if it is "offered against an opposing party" and it "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). When seeking to introduce a coconspirator's statement under this Rule, the government must "show by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included both the declarants and the defendants against whom the statements were offered, and (3) the statements were made during the course of and in furtherance of the conspiracy." *United States v. Mathis*, 932 F.3d 242, 254 (4th Cir. 2019) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). Here, only the third prong is in dispute.[1]

"A statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *United States v. Smith*, 441 F.3d 254, 262 (4th Cir. 2006) (quoting *United States v. Shores,* 33 F.3d 438, 443 (4th Cir. 1994)). Even a statement "made by a conspirator to a non-member of the conspiracy" may be deemed "'in furtherance' of the conspiracy" if, for example, it was "'designed to induce [the non-member] either to join the conspiracy or to act in a way that will assist it in accomplishing its objectives.'" *Id.* (quoting *Shores*, 33 F.3d at 444). "Most courts, including the Fourth Circuit, 'construe the in furtherance requirement so broadly that even casual relationships to the conspiracy suffice to satisfy the exception.'" *Id.* (citation omitted).

---

[1] This Memorandum Order presupposes that the Government will present adequate evidence of a conspiracy that included both the defendants on for trial and declarants on the challenged phone calls.

Jenifer's first motion in limine seeks to exclude three trial exhibits consisting of recorded phone calls from the Government's presentation of evidence at trial. ECF 110. In opposition, the government states that it will not seek to introduce two of the challenged exhibits (Gov't Exhibits 4.23 and 4.24), ECF 118 at 7, but it opposes the motion to exclude the remaining exhibit (Gov't Exhibit 4.21), which consists of two separate recorded call sessions (nos. 184 and 199), *id.* at 5–6.

Call session no. 184 is a brief recorded phone call made on December 22, 2022, in which co-defendant and co-conspirator Anton Black told his girlfriend Hong Lee that he received her message, "but I'm working[,]" and "I'm going down the steps with Nutty . . . ." Gov't Ex. 4.21.01. "Nutty" is an alias of Jenifer.

Call session no. 199 is a longer recording captured about one hour later in which Black and Lee argued about visitors to Black's residence while Lee is away and Lee later complained about "Nutty," asking, "[W]hat makes Nutty think he can go in your house, make all that money and don't have to pay you a dime?" Gov't Ex. 4.21.02. Black answered, in part, "['C]ause he actually furnishes the drugs that we actually sell. . . . I couldn't work the business exactly the way I work the business now without him, and, the reason why I let the business go the way I let the business go is because of this, you know the Co-Co situation I have." *Id.* "Co-Co" is a reference to cocaine. When Lee stated that she did not understand, Black replied, in part, "If I would get him out of here, then I can't, I can't get Co-Co's on the low-low." *Id.* When Lee stated that she understood "that part," Black continued, "I'm getting enough low Co on the low Co to pay for the stuff he is giving me anyway. So really his stuff is paying for his stuff." *Id.* Lee affirmed her understanding, and Black continued again, "There you go, and all at the same time I'm getting the friends benefits of things of why he's actually around." *Id.*

3

Jenifer's first motion in limine is granted as to call session no. 184 but is denied as to call session no. 199. I find by a preponderance of the evidence that the statements Black made to Lee during call session no. 199 were intended to assuage Lee's concerns and induce her acquiescence in Jenifer's use of Black's residence in furtherance of their drug trafficking activities. Black's and Lee's statements during this phone call suggest that they understood Lee to have been practically residing at Black's residence or at least spending a considerable amount of time there. During the phone call, Lee voiced frustration with Jenifer's use of the residence to sell drugs without (in her view) adequately compensating Black. Lee's frustration with Jenifer's use of the residence likely posed some threat—however minor—to Black's and Jenifer's drug trafficking operation. Therefore, Lee's acquiescence in the use of the residence by the drug trafficking conspiracy would "assist [the conspiracy] in accomplishing its objectives[,]" *Smith*, 441 F.3d at 262, and Black likely sought Lee's acceptance by explaining the benefits of his arrangement with Jenifer. Black's probable intentions suffice to bring his statements within the broad ambit of Rule 804(d)(2)(E)'s "in furtherance" requirement. *See Smith*, 441 F.3d at 262 (noting broad construction of "'the in furtherance requirement'" such "that even casual relationships to the conspiracy suffice to satisfy the exception[]'"). I find by a preponderance of the evidence that Black's statements on call session no. 199 are not hearsay because they are offered against Jenifer and they were made by a co-conspirator "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The motion to exclude this exhibit is denied.

However, Black's motion to exclude other recorded phone calls is granted. Specifically, call session no. 184 and the recordings contained in Government Exhibits 4.32, 4.34, 4.37, 4.38, 4.41, 4.42, 4.44, 4.46, 4.47, 4.48, 4.49, 4.52, and 4.55 shall be excluded from the Government's presentation of evidence as hearsay because the statements made on these phone calls were not

made "in furtherance of the conspiracy." *Id.* On each of these calls, Black engaged in general conversation with a non-member of the conspiracy during which he made statements about his and Jenifer's drug trafficking activities. The Government seems to argue generally that this subject matter alone is sufficient to make the statements of a co-conspirator admissible under Rule 801(d)(2)(E) as having been made "in furtherance of the conspiracy." The Government is mistaken. Most of the challenged calls consist of Black idly rambling about his and Jenifer's activities and future plans to persons with no apparent involvement in the drug trafficking conspiracy, who have no apparent use for the information Black was sharing. *United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986) ("idle conversation" that "touches upon," but "does not 'further,' a conspiracy, . . . should not be admitted under Rule 802(d)(2)(E)"). The non-conspirators on the other side of Black's phone calls typically contribute nothing to the conversation apart from single-word acknowledgments and pleasant affirmations.

The Government argues that several of the phone calls are justified by Black describing the status of the conspiracy to a non-member but fails to cite any authority in support of this position. The cases relied upon by the Government appear to involve statements between co-conspirators—not statements a conspirator makes to a non-conspirator. *See, e.g.*, *United States v. Graham*, 711 F.3d 445, 452–55 (4th Cir. 2013); *United States v. Celis*, 608 F.3d 818, 842–44 (D.C. Cir. 2010); *United States v. Carson*, 455 F.3d 336, 366–67 (D.C. Cir. 2006).

For most of the challenged calls, the Government makes no attempt to explain how Black's statements were "intended to promote the conspiracy's objectives . . . ." *Smith*, 441 F.3d at 262. Where the Government attempts to offer such an explanation, it fails to persuade. For example, regarding Government Exhibit 4.46, the Government argues that Black's statements about the drug trafficking conspiracy to Carlene Johnson were intended "to induce her to accept his continued

5

participation in the conspiracy and also to induce her to pay his insurance bill, which in turn would allow him to focus the drug conspiracy money on the DTO's [drug trafficking organization] future objectives." ECF 118 at 10–11. But there is nothing in the record to suggest that Johnson had any problem accepting Black's participation in the conspiracy or, even if she did, that her acceptance would assist the conspiracy in any way. And, although Black asks Johnson to pay an insurance bill during the phone call—without any objection by Johnson, by the way—there is nothing said on the call to suggest that Black's statements about his and Jenifer's drug trafficking activities were made to "induce" Johnson to comply with this request or that her compliance was intended to facilitate Black's participation in the conspiracy.

On Government Exhibit 4.47, Black discussed an unidentified male drug customer with an unidentified female. The Government argues that Black's statements to the unidentified female on the call "were designed to assist [the unidentified female] in locating the unidentified male who was in possession of drugs recently purchased from the DTO." ECF 118 at 11. But there is no indication during the phone call, nor evidence elsewhere, to suggest that Black sought the unidentified female's assistance locating the male customer or that locating the male customer would assist the conspiracy in any way.

Government Exhibit 4.49 is a recorded phone call between Black and Lee on January 31, 2023, about a month after Government Exhibit 4.21. The Government argues that, during this call, Black was still trying to "induce" Lee to comply with the arrangements Jenifer made with Black to sell drugs out of Black's residence. But there is no evidence to support that conclusion. Unlike on Government Exhibit 4.21, Lee on Government Exhibit 4.49 never questions nor protests Jenifer's activities at the residence. Black and Lee simply discuss their understanding Mr. Jenifer's plans to use a car dealing business to launder proceeds from drug trafficking. There is nothing to

suggest that Black made the statements he made about Jenifer to seek assistance in obtaining the conspiracy's objectives or that Black's statements are otherwise reliable.

On Government Exhibit 4.55, Black complained to an unidentified male about how a mutual acquaintance Black calls "Nephew" came to Black's front door from a nearby location where fentanyl was sold, suggesting that this conduct may draw unwanted attention to the drug trafficking operation at Black's residence. Although Black states generally, and the unidentified male generally agrees, that Nephew needed to be corrected, the Government points to no evidence indicating that the unidentified male was a member of the drug trafficking conspiracy or that Black sought the unidentified male's assistance in correcting Nephew. I cannot find that Black's statements on this phone call were intended to promote or to assist the conspiracy in attaining its objectives.

The Government argues that admission of the challenged phone calls is justified under Rule 804(b)(3). This Rule provides an exception to the rule against hearsay "if the declarant is unavailable as a witness" under Rule 804(a) and

> (A) a reasonable person in the declarant's position would have made the statement "only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) if [the statement is] offered in a criminal case as one that tends to expose the declarant to criminal liability, [it] is supported by corroborating circumstances that clearly indicate its trustworthiness after considering the totality of circumstances under which it was made and any evidence that supports or undermines it.

Fed. R. Evid. 804(b)(3). "Thus, hearsay may be admitted under this exception if (1) the declarant is unavailable, (2) the statement is genuinely adverse to the declarant's penal interest, and (3)

7

'corroborating circumstances clearly indicate the trustworthiness of the statement.'" *United States v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir. 1995) (quoting Fed. R. Evid. 804(b)(3)).

Rule 804(b)(3) does not justify admission of the challenged recordings here because the Government has not established that the declarant, Black, is "unavailable" within the criteria set forth in Rule 804(a) and has not presented "corroborating circumstances that clearly indicate [the] trustworthiness" of each of the many challenged out-of-court statements by Black.

In sum, Jenifer's motions to excluded recorded phone calls on hearsay grounds are granted in part and denied in part. The motion to exclude call session no. 199 is denied. The remaining challenged recordings shall be excluded from the Government's case-in-chief as hearsay.

### II.     Relevance and Unfair Prejudice Objections to Government Trial Exhibits

Jenifer and Turner each seek exclusion of certain government exhibits on grounds of non-relevance and unfair prejudice. Jenifer objects to the introduction of photographs of his residence and firearm captured in connection with a search warrant executed at that location. Turner challenges introduction of a recorded phone call between him and Black during which Turner notes that he is armed with a firearm. These motions are denied because the challenged exhibits are relevant and their probative value is not substantially outweighed by any risk of unfair prejudice.

Relevant evidence is generally admissible. *See* Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. But a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a

8

jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (quoting *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006)).

Jenifer seeks to exclude certain photographs designated by the Government as trial exhibits. One photo depicts the exterior of Jenifer's residence (Government Exhibit 1O), and another shows a staircase inside the entrance to the residence (Government Exhibit 9G). These photos are relevant because law enforcement executed a search warrant at this location and recovered evidence of a drug trafficking operation, including multiple cell phones, cash, and a money counter, which the Government intends to present at trial. The recovery of these items and location where they were recovered tends to make it more probable that Jenifer—a resident of the location—was involved in the charged drug trafficking conspiracy. Photos of the location where the items were recovered supports the allegation by placing the search warrant in context. Jenifer's argument that the photos are unfairly prejudicial because they may "mak[e] it appear to the Jury that he is extremely wealthy" is not persuasive. ECF 117 at 2–3. There is nothing shocking about the photos, and it is highly improbable that they will excite any juror to irrational behavior.

Jenifer also opposes introduction of a photo taken of the handgun found in his residence, arguing that it is not relevant because he is not charged with criminal possession of the handgun. ECF 117 at 2. However, the Government has evidence that at least one other member of the conspiracy possessed a firearm in furtherance of the conspiracy. Turner noted that he was armed in a recorded phone call with Black about a suspicious vehicle. *See* Gov't Exhibit 4.02. Firearms have been widely recognized as "of the drug trade[,]" and "the 'admission of handguns into evidence in drug cases has been consistently upheld as relevant to the issues raised by such cases.'" *United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999) (quoting *United States v.*

9

*Collazo*, 732 F.2d 1200 (4th Cir. 1984)). "Evidence of gun possession is relevant evidence in a drug conspiracy trial, even if there is no specific evidence linking the weapon to the conspiracy." *United States v. Bivins*, 205 F.3d 1335 (4th Cir. 2000). That is not to say that there is any "*per se* rule . . . requiring district courts to admit gun evidence in drug conspiracies." *Ward*, 171 F.3d at 195. But the Federal Rules of Evidence "evince a strong preference for the admission of all relevant evidence[,]" and "[e]vidence of gun possession and ownership is logically relevant in many drug conspiracies." *Id.* Here, the Government's evidence that another member of the drug trafficking conspiracy possessed a firearm he was prepared to use to protect the conspiracy suffices to render the photo of Jenifer's handgun relevant and admissible. The probative value of the photo is not substantially outweighed by a risk of unfair prejudice. It is a simple photo of a handgun in a resting position. It is entirely unlikely that the photo would prompt any irrational response from the jury.

In his motion in limine, Turner seeks to exclude an unspecified number of recorded conversations but only identifies one recorded phone call—the aforementioned call between Turner and Black (Government Exhibit 4.02). ECF 116. On this phone call, Turner described to Black a vehicle that had been driving in the area in suspicious manner, which Turner observed through counter surveillance. Eventually, Turner stated, "I'm heavy. They, they fucking with the right hood[,]" which the government states is a reference to Turner being armed with a firearm. Gov't Ex. 4.02. Turner argues that the statements on this phone call are not relevant and, alternatively, their probative value is substantially outweighed by the danger of unfair prejudice. I am not persuaded.

The statements made by Black and Turner on Government Exhibit 4.02 are relevant in that they tend to make more probable the government's allegation that Black and Turner were both

members of the charged drug trafficking conspiracy and that each had an interest in the success of the operation and in defending the operation against outside threats. The probative value of the statements is significant and not outweighed by any risk of unfair prejudice to Turner. Turner points out that he is not charged with any firearms offenses. But "[g]uns are tools of the drug trade" and commonly serve as evidence drug trafficking conspiracies. *Ward*, 171 F.3d at 195; *see also Bivins*, 205 F.3d 1335 ("Evidence of gun possession is relevant evidence in a drug conspiracy trial, even if there is no specific evidence linking the weapon to the conspiracy."). And Turner's statement on the phone call about being armed does not present "a genuine risk that the emotions of a jury will be excited to irrational behavior . . . ." *Siegel*, 536 F.3d at 319 (quoting *Williams*, 445 F.3d at 730). Accordingly, Turner's motion to exclude this exhibit is denied.

In sum, the defendants' motions seeking exclusion of trial exhibits under Federal Rules of Evidence 401, 402, and 403 are denied.

### III.   Conclusion

For the reasons set forth above, it is by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Jenifer's first and second motions in limine (ECF 110 & 117) are each GRANTED IN PART and DENIED IN PART;
2. Turner's motion in limine (ECF 116) is DENIED;
3. Call session no. 184 and Government Exhibits 4.32, 4.34, 4.37, 4.38, 4.41, 4.42, 4.44, 4.46, 4.47, 4.48, 4.49, 4.52, and 4.55 are EXCLUDED from the Government's case-in-chief at trial.

It is so ORDERED this 23rd day of December, 2025.

/s/
_____
Matthew J. Maddox
United States District Judge